IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CAMALLE and TIMOTHY STONE,  as the parent of GABRIELLE STONE,  )  )  )  )  Plaintiffs,  )  )  v.  )  )  UNITED STATES OF AMERICA, *et al.*,  )  )  )  Defendants.  )  ) | CIVIL ACTION NO. 5:25-CV-82 (MTT) |

## ORDER

On July 22, 2024, a partition wall collapsed in the bathhouse of the Heritage Pool at Robins Air Force Base in Warner Robins, Georgia, killing 14-year-old Gabriel Stone. Doc. 1 ¶ 1.  Gabriel's parents, Camalle and Timberly Stone, filed this lawsuit against the United States, the United States Air Force, and others, alleging negligence in the inspection, maintenance, and construction of the wall under the Federal Tort Claims Act ("FTCA"), and Georgia law.  *Id.* ¶¶ 56-88.  They seek to recover damages for the pain and suffering endured by their son and other damages caused by his death.  *Id.* ¶ 3, at 17 ¶¶ A-D. The United States has moved to dismiss several claims, arguing: (1) that the FTCA's discretionary function exception bars the negligent inspection and maintenance claims; (2) that the plaintiffs lack standing to bring a survivorship claim; and (3) that the United States Air Force and unnamed Air Force employees are improper parties under the FTCA.  Docs. 9; 9-1.  For the following reasons, that motion (Doc. 9) is **GRANTED** in part and **DENIED** in part.

Specifically, in their response, the plaintiffs agreed to dismiss the United States Air Force and unnamed Air Force employees as parties.  Doc. 13 at 9.  They also stated they "will seek leave to amend the complaint to properly allege the survivorship claim."  *Id.* at 8-9.  Accordingly, the motion is **GRANTED** as to those claims, which are hereby dismissed without prejudice.  The motion is **DENIED** in all other respects.

## I. BACKGROUND

### A. Factual Background

Gabriel died because a partition wall collapsed inside the men's bathhouse of the Heritage Pool, where he had been swimming with his father, sibling, and friends.  Doc. 1 ¶¶ 37-38.  Gabriel and his friends had climbed onto the top of the wall, which began to sway and ultimately fell, pinning Gabriel beneath its rubble.  *Id.* ¶¶ 39-42.  The wall was constructed in 1969, was made of hollow, non-load-bearing cinder blocks, and lacked horizontal or vertical supports, in violation of required building codes at the time of its construction.[1]  *Id.* ¶¶ 1, 26, 29, 31, 33-34.  The wall allegedly never was inspected for stability or compliance with required building codes and had not been modified since its construction, despite a 1982 project to update pool facilities on Robins Air Force Base.  *Id.* ¶¶ 35-36, 54-55.  In June of 2018, "an unstable [cinder] block wall" located in the women's nearby bathhouse was identified and repaired through unscheduled maintenance, but there are, as yet, no known maintenance records for the partition wall in the men's bathhouse.  Doc. 9-3 at 17, 20.

---

[1] Specifically, an investigation by the United States Air Force Ground Accident Investigation Board ("GAIB") concluded that the wall was not built according to the 1965 Standard Building Code.  Docs. 1 ¶ 1; 9-3 at 25.  According to the GAIB report filed by the defendants, the "partition wall required some type of lateral support, which was absent, such as rebar anchors connecting the base of the [wall] to the floor or vertical supports attaching the sides of the [wall] to the floor and/or ceiling, to prevent overturning."  Doc. 9-3 at 25; *see* Doc. 1 ¶ 53 ("[A] post-collapse analysis of the partition wall noted that there was only minimum adhesion between the grout at the base of the partition and the concrete floor.").

The plaintiffs allege that the Air force was obligated to ensure that the wall was built according to the standard building code for 1969.  *E.g.,* Doc. 1 ¶ 61, 63.  They also allege that the Air Force had a duty to conduct adequate inspections and repairs to ensure the safety and stability of facility structures, such as the partition wall.  *Id*. ¶¶ 60-64.  The plaintiffs allege breaches of these duties caused Gabriel's death.  *Id* ¶¶ 56-79.

Specifically, the Air Force, through its 78th Civil Engineer Squadron, was responsible for the maintenance and repair of the Heritage Pool and its structures, including the wall that collapsed.  *Id.* ¶¶ 9, 52.  The United States also claims several inspection programs apply to the bathhouse, including a weekly Facility Manager Inspection, a monthly Unit Safety Representative Inspection, an annual Safety Inspection, and a Builder Assessment conducted every four years.  Docs. 9-1 at 7-9; 9-3 at 17-19.  However, "none of these inspections," according to the United States, "are designed to identify potential structural or safety issues with the partition wall."  Doc. 9-1 at 9 n.4.  In fact, no preventive maintenance practices, according to the exhibits filed by the United States, exist for concrete masonry unit walls such as the wall in this case.  Doc. 9-3 at 19.

**B.  Procedural History**

On March 4, 2025, Gabriel's parents filed this lawsuit against the United States under the FTCA, alleging negligence in the construction, inspection, and maintenance of the partition wall.  Doc. 1.  The United States has moved to dismiss the negligent maintenance and inspection claims, arguing the claims are barred by the FTCA's discretionary function exception.[2]  Docs. 9; 9-1.

---

[2] *See* Docs. 9-1 at 4 n.1 ("[T]the United States is not moving to dismiss the negligent construction claim …"); 14 at 2 n.1 (same).

-3-

## II. STANDARD

The Federal Rules of Civil Procedure require generally that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In this case, the defendants move to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1). Docs. 9; 9-1. A motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) generally takes one of two forms—a facial attack or a factual attack. *See, e.g., Douglas v. United States*, 814 F.3d 1268, 1274-75 (11th Cir. 2016). When presented with a facial attack, a court determines whether the complaint has sufficiently alleged subject-matter jurisdiction. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999) ("Facial attacks' on the complaint 'require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true ....") (alteration in original). Just like "a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged … in the complaint as true." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009*), abrogated on other grounds by Mohamad v. Palestinian Auth*., 566 U.S. 449, 456 (2012) (holding only a natural person is liable as an "individual" under the Torture Victim Protection Act). By contrast, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered," so long as they are not intertwined with the merits of the case. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (internal quotation omitted); *see Douglas*, 814 F.3d at 1274-75.

According to the plaintiffs, "the Defendants have not articulated which type of attack they assert," but the plaintiffs contend the attack is facial. Doc. 13 at 3. Thus, the plaintiffs bear the burden of alleging a plausible claim that falls outside the FTCA's discretionary function exception. *Douglas*, 814 F.3d at 1273-75.

To avoid dismissal pursuant to Rule12(b)(6), the complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

### III. DISCUSSION

The FTCA waives sovereign immunity for certain torts committed by federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b). The discretionary function exception withdraws that waiver for claims based on the exercise or performance, or failure to exercise or perform, a discretionary function or duty. 28 U.S.C. § 2680(a). The exception applies when (1) the challenged conduct involves an element of judgment or choice, and (2) the judgment is the kind the exception was designed to shield, i.e., subject to considerations of social, economic, or political policy. *United States v. Gaubert*, 499 U.S. 315, 322-24 (1991); *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157-58 (11th Cir. 2020). If it applies, courts lack subject matter jurisdiction, and the claims must be dismissed. *Foster*, 973 F.3d at 1159, 1169.

To survive a motion to dismiss, the complaint must allege facts showing that the government employee's conduct was not discretionary or that the conduct was not subject to protected policy considerations. *Id.* at 1158-59; *see Douglas*, 814 F.3d at 1274-75. The government, however, has the burden of producing evidence of the policy considerations that might influence the challenged conduct. *Ochran v. United States*, 117 F.3d 495, 504 n.4 (11th Cir. 1997); *see Foster*, 973 F.3d at 1159-60. If a jurisdictional challenge implicates the merits of the underlying claim, then: "'[T]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.'" *Douglas*, 814 F.3d at 1275 (citation omitted). Here, the Court concludes that the plaintiffs have alleged facts sufficient to take their negligent inspection and maintenance claims outside the scope of the discretionary function exception.

The policy cited by the plaintiffs—the Air Force Built Infrastructure Inventory and Assessment Manual—uses permissive language such as "should" and "may," which courts have consistently interpreted as discretionary rather than mandatory.[3]  Doc. 13 at 6-7.  Specifically, the plaintiffs' response points to language in the Air Force's Built Infrastructure Inventory and Assessment Manual, filed as an exhibit to the defendants' motion, which states that "as-built drawings should be used to identify and quantify the interior construction components" of concrete masonry walls like the partition during required inspections.  Docs. 9-9 at 5; 13 at 6-7.  If such drawings are unavailable, the manual states assessors "may" rely on experience or other resources.  Doc. 9-9 at 5.  The plaintiffs argue this language creates a mandatory directive, leaving no room for discretion.  Doc. 13 at 6-7.  They also claim structural defects in the wall's design would have been identified and corrected if these directives were followed.  *Id.*

The United States argues the use of the word "should" is permissive, not mandatory, and does not prescribe specific actions for inspecting or maintaining the wall.  Doc. 14 at 3-4.  The United States also cites broader policies, including the "Department of Air Force Pamphlet 90-803: Risk Management Guidelines and Tools" and "Air Force Policy Directive 32-90: Real Property Management."  Doc. 9-1 at 12-13 (citing Docs. 9-11; 9-12).  According to the United States, these policies grant Air Force employees discretion in how and whether to inspect and maintain facilities, including the partition wall, and show such decisions are subject to policy considerations like mission readiness, budgetary constraints, and resource allocation.  *Id.*; *accord* Doc. 9-1 at 9 n.4.

---

[3] *Autery v. United States*, 992 F.2d 1523, 1559 (11th Cir. 1993) ("Only if a 'federal statute, regulation, or policy specifically prescribes a course of action,' … embodying a 'fixed or readily ascertainable standard,' will a government employee's conduct not fall within the discretionary function exception.").

The Court assumes, without deciding, that the acts or omissions at issue involved some degree of discretion.[4]  However, at this stage of the case, the United States' proffered policy considerations—e.g., resource allocation, budgetary constraints, and mission readiness—are not "policy implications … [Air Force] employees might reasonably need to consider" in deciding whether to consult as-built drawings or assess structural integrity during required facility inspections and maintenance.  *Foster*, 973 F.3d at 1158-59, 1164.  The second part of the discretionary function test looks to the nature of the challenged conduct in an objective, or general sense, and asks whether that decision is one you would expect inherently to be grounded in considerations of social, economic, or political policy.  *Id.*  At this stage, the plaintiff must "allege facts which would support a finding that the challenged actions are not the kind of" policy choice that the FTCA is designed to protect, i.e., conduct that cannot "be said to be grounded in the policy of the regulatory regime."  *Gaubert*, 499 U.S. at 324-25.

Here, the plaintiffs challenge the failure to inspect or repair a wall that was structurally unsafe and non-compliant with required building codes—by, for example, not consulting as-built drawings during required inspections.  Doc. 13 at 6-7.  But this choice is not one which you would expect inherently to be grounded in considerations of social, economic, or political policy, and cannot "be said to be grounded in the policy of

---

[4] In determining whether the government has a non-discretionary duty to act, the source of that duty can be found in many places, such as safety manuals, contracts, and policies.  *See*, *e.g.*, *Phillips v. U.S.*, 956 F.2d 1071 (11th Cir. 1992) (holding that a non-discretionary function existed based on a safety manual); *Swafford v. U.S.*, 839 F.3d 1365, 1372 (11th Cir. 2016) (holding that a non-discretionary function existed when a contract "specifically required [an employee] to inspect, maintain, and repair the Campground's stairways'"); *Gaubert*, 499 U.S. at 322 (explaining that government conduct is non-discretionary if "a federal statute, regulation, or policy, specifically prescribes a course of action for an employee to follow") (quoting *Berkowitz v United States,* 486 U.S. 531, 536 (1998)).  Here, the Government has expanded the record perhaps to bolster its argument that the Air Force's inspection duties are discretionary.  Discovery may or may not confirm that.

the regulatory regime" cited by the United States.⁵  *Gaubert*, 499 U.S. at 324-25.  This is particularly true here because the facts support the inference that Air Force employees knew that a similar wall in the women's bathhouse was structurally unsound.  *E.g.,* Doc. 9-6 at 19 ("Commanders and functional managers must: …. Ensure all appropriate hazard abatement actions needed to resolve identified hazards are implemented and follow-up is accomplished until all abatement actions are complete."); *see Swafford v. United States*, 839 F.3d 1365, 1371 (11th Cir. 2016).⁶  The Court cannot assume that the decision not to address a known hazard to children is one grounded in social, economic, or political policy.⁷  *Gaubert*, 499 U.S. at 324-25; *see Foster*, 973 F.3d at 1164 ("[O]nce the Corps exercised its discretion to build <u>and</u> maintain the stairs, failure to maintain them in a safe condition [was] simply not a permissible exercise of policy judgment.") (second and third alteration in original) (quoting *Swafford*, 839 F.3d at 1371-72).  Thus, whether the discretionary function exception applies cannot be resolved on a motion to dismiss.  *Douglas*, 814 F.3d at 1275.

---

⁵ *Compare, e.g.*, Doc. 1 ¶¶ 35 ("[T]here is no evidence that any inspection was ever done to determine if the wall needed horizontal or vertical support."), 36 ("[T]here is no information that the stability of the wall or lack thereof was inspected. "); *with* Docs. 9-4 at 5 ("The [Base Civil Engineer] shall …. Ensure operations flight work complies with applicable laws, codes, and standards …"); 9-6 at 5 (same); *see also* Doc. 9-4 at 30 ("*Work is reviewed for compliance with building codes* ….") (emphasis added).

⁶ In *Swafford*, the Eleventh Circuit held that failure to maintain safe premises, such as a staircase or lighthouse, is not a "permissible" policy decision under the FTCA.  839 F.3d at 1371.  Maintaining a partition wall in a bathhouse at a recreational pool appears, for now, to fall into this category.  *Gibson v. United States*, 809 F.3d 807, 814 (5th Cir. 2016) ("[A]n agency's decision to forgo, for fiscal reasons, the routine maintenance of its property—maintenance that would be expected of any other landowner—is not the kind of policy decision that the discretionary function exception protects.") (quoting *O'Toole v. United States*, 295 F.3d 1029, 1036 (9th Cir.2002)).

⁷ *Foster*, 973 F.3d at 1165–66 ("[T]here is no contention here that the U.S. Forestry Branch acted negligently, or otherwise improperly, in exercising its discretion to <u>start</u> the fire in the first place.") (alteration in original).

## IV. CONCLUSION

For the foregoing reasons, the United States' motion to dismiss (Doc. 9) is **GRANTED** in part and **DENIED** in part, as stated in this order.

**SO ORDERED**, this 2nd day of September, 2025.

<pre>                              S/ Marc T. Treadwell
                              MARC T. TREADWELL, JUDGE
                              UNITED STATES DISTRICT COURT</pre>

## IV. CONCLUSION

For the foregoing reasons, the United States' motion to dismiss (Doc. 9) is **GRANTED** in part and **DENIED** in part, as stated in this order.

**SO ORDERED**, this 2nd day of September, 2025.

<pre>                              S/ Marc T. Treadwell
                              MARC T. TREADWELL, JUDGE
                              UNITED STATES DISTRICT COURT</pre>